IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RUTH OZOLINS, | ) <br> ) <br> ) |
| Plaintiff, | ) C.A. No.: |
| v. | ) <br> ) TRIAL BY JURY DEMANDED <br> ) |
| E.I. DUPONT DE NEMOURS, AND COMPANY, a Delaware Corporation, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) |

## COMPLAINT

### THE PARTIES

1.  Ruth Ozolins ("Ozolins") is a resident of the United States, Commonwealth of Pennsylvania.

2.  Defendant, E.I. DuPont DE Nemours & Co., Inc., is a corporation organized and existing under the laws for the State of Delaware, whose agent for Service of Process is: The Corporation Trust Company, The Corporation Trust Center, 1209 North Orange Street, Wilmington, DE 19801.

### JURISDICTION

3.  This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America. This action arises under Title VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et.seq., as amended

by the Civil Rights Act of 1991, §704, Title VII, the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.,  (hereinafter "ADA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq  (hereinafter "ADEA"). Accordingly, this Court has jurisdiction of the controversy based upon the provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28 U.S.C. §§1331 and 1334.

## VENUE

4. The unlawful employment practice alleged herein was committed within the State of Delaware. Accordingly venue lies in this Court, under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to the filing of this action, the plaintiff timely filed a written Charge of discrimination and retaliation, under the provisions of 42 U.S.C. §2000e, et.seq., 42 U.S.C. 12101, et seq., and 29 U.S.C. § 621, et seq. with the Equal Employment Opportunity Commission, on June 19, 2013

6. Thereafter, on March 3, 2016 the U.S. Equal Employment Opportunity Commission issued to the plaintiff a *final* "Determination and Notice of Rights" letter which was received by the plaintiff on or about March 5, 2016.

## FACTS

7. The plaintiff is a legal resident of the United States of America having been born and raised in Canada.

8. The plaintiff was educated and received a legal degree from Osgoode Hall Law School, York University, Toronto Canada.

9. The plaintiff began her employment with DuPont located in the State of Delaware in 2000.

10. Prior to being employed by DuPont within the State of Delaware the Plaintiff was employed by DuPont Canada, Inc., as a Commercial Attorney.

11. When Dupont transferred the plaintiff to the defendant's premises in the State of Delaware she began working as a commercial attorney advising various DuPont businesses during the course of her employment.

12. During the hiring and transfer process DuPont obtained all appropriate visas, including subsequent Permanent Residence status for plaintiff.

13. Plaintiff was admitted to the Delaware Bar under the Supreme Court Rule 55.2.

14. Thereafter the Plaintiff continued to practice law as an "in house" attorney in the Commercial Practice Group.

15. In the summer and early fall of 2011 eight (8) female attorney's, including the plaintiff, in the Commercial Practice Group discovered that male members of the Commercial Practice Group were being promoted in

disproportionate numbers compared to those for women attorneys and as a result had significantly higher incomes.

16. During November 2011 a meeting was scheduled with DuPont legal management to voice the female attorneys concerns about salaries and promotions.

17. There was a follow-up meeting held on November 29, 2011 where the DuPont legal management advised the female attorney's that any discrepancy was their fault because they had not promoted themselves as had their male counterparts.

18. In December 2011 plaintiff was advised that DuPont Legal Management could only propose one person for promotion in any given year, a policy to which the plaintiff learned was untrue and objected.

19. At the same time, in December 2011 plaintiff's supervisor stated that perhaps he would be better off to concentrate on younger women.

20. In January 2012 news reports began to appear about the sale of the DuPont Performance Coating's Business, i.e. Automotive Paint Business.

21. On August 23, 2012 Plaintiff was informed by her supervisor David Shelton, that she had been selected to be involuntarily transferred from DuPont to the new Performance Coatings Business, despite the fact that Plaintiff never worked with that business and did not want to move.

22. Plaintiff was informed by the defendant that she would not suffer any losses from her defined pension or other retirement benefits because of a transfer.

23. In reality the involuntary transfer would severely effect both the plaintiff's loss of pension benefits and the entire loss of retirement healthcare benefits, all of which she would have received with an additional two-years of service if she remained employed by the defendant.

24. On September 20, 2012 an announcement was publically made of the transfer of the plaintiff from DuPont to the Performance Coatings Business.

25. The new Performance Coating Business was to be known as Axalta, after closing of the divestiture on February 1, 2013.

26. During August and subsequent to plaintiff's announced transfer within DuPont to the subject business plaintiff learned that other than the attorney's already a part of the divested entity and who had been transferred were two additional female attorney's, over the age of sixty (60), who were forced to transfer to the new company.

27. Plaintiff was born on November 23, 1951, and at the time of these events was 61 years of age.

28. In November 2012 plaintiff learned that the new corporation, Axalta, would be moved from Delaware to Pennsylvania.

29. The plaintiff was aware of and knew that because of the different jurisdictions she was, unlike in Delaware, would not be qualified to practice law in Pennsylvania as an Ontario, Canada qualified attorney since Pennsylvania does not have the equivalent reciprocal of a Delaware Rule 55.2 Admission.

30. On December 5, 2012 plaintiff notified DuPont Management of the effect of her foreign bar status and that a move to Pennsylvania would mean that she was no longer qualified to practice law. In doing so plaintiff met with Tom Sager, Senior Vice President and General Counsel and Martha Rees, Vice President and Associate General Counsel. At that meeting the Plaintiff was assured that her professional status would remain the same in Pennsylvania, despite having been offered evidence to the contrary.

31 Plaintiff was the only commercial attorney to who this restriction applied and DuPont was advised of this impediment almost three months prior to closing the sale of the business.

32. Subsequent to the December 5, 2012 meeting plaintiff learned and informed DuPont Legal Management that as a result to move to Pennsylvania the suggested solution was that she could find a job as a paralegal. Plaintiff found such a suggestion unacceptable and demeaning.

33. Throughout the period from September 2002 through January 2013, while working for DuPont, plaintiff suffered severe mental stress which was diagnosed as Severe Situational Depression with an anxiety disorder.

34. As a result of plaintiff's mental condition she sought counseling through the DuPont Employee Assistance Program, has been separately receiving private therapy and medication for her condition.

35. Plaintiff subsequent managers at the DuPont Performance Coatings Business were aware of her emotional and mental distress, both through verbal communications, written emails, and visually observing her emotional state and would harass and belittle her. DuPont's Legal Management also observed plaintiff's severe emotional distress.

36. Plaintiff informed DuPont's Legal Management that she was seeing a therapist and had been prescribed medication for her emotional upset.

37. Her management at the Performance Coatings Group threatened that she would never receive a promotion and berated her for her emotional state. Louse Perna, the HR Manager, threatened her with loss of employment if she did not stop crying, or expressed her distress to any other employee.

38. Plaintiff had requested accommodation of her disabilities with her management by not harassing her, not falsely accusing her of bad attendance, and

to demonstrate more patience. Defendant managers only increased the pressures on the plaintiff.

38. Plaintiffs immediate manager, Lisa Passante, and Perna had been made aware that plaintiff was on medication and in therapy because of the stress and anxiety, but none the less Passante implied that plaintiff was faking her condition and behaving in a manner since there was "no root back to DuPont."

39. In December 2012 and January 2013 Passante and Perna assessed plaintiff's "performance" for the whole of 2012 and for the future, rating her "below" requirements, despite have work there for only thee months.

40. Prior to the forced transfer to the Performance Coatings Business plaintiff was always been rated in the One-Hundred Percent (100%+) range for DuPont.

41. Rating for plaintiff at the Performance Coatings Business was Forty-Five Percent (45%).

42. The Performance Coatings Business determined as a result of the plaintiff's ratings she would receive no future merit increase.

43. As a direct and proximate result of the plaintiffs mental disability she received low ratings, denied a merit raise, and a significant decrease in the variable compensation which were all a part of the DuPont Compensation package.

44. The plaintiff had requested an accommodation of her disability of less pressure and ceasing of any belittling and accusations, in an effort to allow her to adjust to her new professional career, all such requests were denied and in fact the criticism and belittling increased.

45. On February 1, 2016 the DuPont Performance Coatings Business was divested to the Carlyle Group and became know as Axalta Coatings.

46. On June 11, 2013 plaintiff was advised her employment with Axalta would end on August 31, 2013, citing the Performance Coating Businesses "…understanding--in light of the law firm view of the risk of your not being authorized to practice law in Pennsylvania, it seemed the best outcome for everyone."

47. At all relevant times the actions of the defendant were committed in bad faith.

48. As a direct and proximate result of the defendant's discriminatory conduct the plaintiff has suffered severe emotional distress, humiliation, emotional pain and is suffering, mental anguish and other non- pecuniary damages.

49. As a direct and proximate result of the defendant's discriminatory conduct the plaintiff has incurred in the past and will continue to incur in the future a loss of wages and benefits, 401k growth, Social Security growth and benefits.

50. As a further and direct proximate result of the defendant's discriminatory conduct the plaintiff has incurred and will incur medical expenses relating to her emotional distress.

51. As a direct and proximate result of the negligence of the defendant the plaintiff will, unless reinstated to a position for which she can perform the essential functions, continue to suffer financial injury.

52. The defendant, by its actions, willfully, maliciously, and intentionally, with reckless indifference discriminated against the plaintiff in violation of the Delaware "Handicapped Persons Employment Protections Act", 19 Del. C. § 720 et seq.

## COUNT I
## Retaliation
## (42 U.S.C. §2000e-3)

53. Plaintiff incorporates herein and makes a part hereof the allegations contained in ¶¶1-52 .

54. The plaintiff complained to the defendant of discriminatory actions described herein.

55. The retaliation by the defendants resulted in the termination of the plaintiff's employment.

56. The actions described herein demonstrate that the defendants retaliated against the plaintiff in violation 42 U.S.C. §2000e-3.

## COUNT II
## Discrimination
## (29 U.S.C. §621, et.seq.)

57. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 56.

58. The actions of the defendant in knowingly transferring her to an employment situation which would result in the termination of her employment of the plaintiff was a result of discriminatory animus based upon the plaintiff's age, in violation of 29 U.S.C. §621 et.seq.

59. The actions of the defendant as described herein were willful.

## COUNT III
## Discrimination
## (42 U.S.C. §12101 et.seq.)

60. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 57.

61. Despite being aware of the plaintiff's restrictions, defendant failed to provide permanent accommodation to the plaintiff under the Americans With Disabilities Act.

62. The defendant, Defendant has thus, by failing to make reasonable accommodation for the plaintiff's disability, violated the Americans With Disabilities Act, 42 U.S.C. §12112(b)(5)(a).

63. At all times relevant herein the actions of the defendant, DuPont were committed in bad faith.

63. The defendant by its actions willfully, maliciously, and intentionally, with reckless indifference discriminated against the defendant in violation of the Americans With Disabilities Act, §12112. In doing so it is subject to punitive damages.

WHEREFORE, the Plaintiff, Ruth Ozolins, demands judgment against defendant, E.I. du Pont de Nemours Company, as follows:

a. Award compensatory damages, including damages for emotional and physical stress, pain and suffering, medical bills, inconvenience, mental anguish, and loss of enjoyment of life and other non-economic losses.

b. Award the plaintiff back pay and interest.

c. Award damages for future lost economic damages.

d. Award the plaintiff pre-judgment and post-judgment interests.

e. Award the plaintiff punitive damages.

f. Award the plaintiff reasonable attorneys' fees.

g. Any further relief which this Court deems just and proper.

/s/ Gary W. Aber
GARY W. ABER (#754)
One Customs House, Suite 600
704 King Street, P.O. Box 1675
Wilmington, DE 19899
(302) 472-4900

gaber@gablawde.com
Dated:                              Attorney for Plaintiff